UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEFFREY BEASLEY, ET AL.,

    Defendants.

                                     /

Case No. 12-20030

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANTS ROY DIXON'S AND JEFFREY BEASLEY'S MOTIONS TO SEVER [68, 79]**

This criminal matter comes before the Court on Defendants Dixon's and Beasley's motions to sever [ECF Nos. 68, 79]. Defendant Zajac has filed a joinder [80] in both motions, and Defendant Stewart has filed a joinder [136] in Defendant Beasley's motion. Defendants Dixon and Beasley each argue that discretionary severance of their respective trials is warranted under Federal Rule of Criminal Procedure 14(a). For the reasons stated below, Defendants' motions are DENIED.

**I.    Background**

Defendants Dixon, Beasley, Stewart, and Zajac are charged in the Fifth Superseding Indictment with conspiring with each other and with others to commit honest services mail and wire fraud. The conspiracy charged in the Indictment centers on corruption in two pension funds of the City of Detroit – the Police and Fire Retirement System and the General Retirement System (collectively the "Retirement Systems"). The charged conspiracy involves individuals who sought investment money from the Retirement

Systems and paid bribes and kickbacks to Trustees of the Retirement Systems in order to get their investment requests approved.

As to Defendant Dixon and the charged conspiracy, it is alleged that Dixon was an investment adviser and the owner and founding member of Onyx Capital Advisers, LLC, and sought a total investment of $20 million from the Retirement Systems into a private equity fund. The Trustees of the Retirement Systems approved Defendant Dixon's request for $20 million in 2007. Following this initial decision to invest, the Trustees were called upon to approve capital calls from Defendant Dixon periodically from 2007 through 2009. In addition, during that same time period, Defendant Dixon, on behalf of PR Investment Group, Ltd., sought a multi-million dollar investment from the Police and Fire Retirement System in real estate in the Turks and Caicos Islands.

The Indictment alleges that, in order to secure investments by the Retirement Systems, Defendant Dixon paid bribes to Co-Defendants Beasley and Stewart. Defendant Beasley was the Treasurer for the City of Detroit and served as a Trustee of both Retirement Systems. Defendant Stewart was the Vice President of a police union, and served as a Trustee of the Police and Fire Retirement System. Co-Defendant Zajac was the General Counsel of the Retirement Systems, and he assisted Defendant Dixon by helping to pass money and other things of value from Defendant Dixon and others to Trustees and Co-Defendants Beasley and Stewart.

**II.  Analysis**

Defendants Dixon and Beasley have both filed motions for severance.

Defendant Dixon initially raised a speedy trial argument that this Court addressed and rejected in an Order entered on December 2, 2013 [ECF No. 91]. Defendant Dixon also

attempts to establish prejudice by arguing that (1) unlike him, his Co-Defendants were associated with former Mayor Kwame Kilpatrick's administration and thus, if tried together with them, he will be prejudiced by spillover from the public antipathy toward the Kilpatrick administration; and (2) he will present a defense antagonistic to those of his Co-Defendants – that he was a victim and not a co-conspirator.

Defendant Beasley also presents two arguments for severance: (1) in light of Dixon's stated defense -- that he was a victim of Beasley's illegal extortion – Defendant Beasley will be prejudiced; and (2) an incurable *Bruton* problem will arise because the government intends to introduce two separate statements that were made by Co-Defendant Dixon to FBI agents and memorialized in FBI 302s to establish that Dixon gave, and Beasley received, a trip to the Turks and Caicos Islands (forming the basis for the 18 U.S.C. § 666 charges).

**A. General Principles**

In *Zafiro v. United States*, 506 U.S. 534 (1993), the Supreme Court discussed Federal Rule of Criminal Procedure 8(b),[1] observing that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Id.* at 537. It recognized that joint trials "play a vital role in the criminal justice system," and "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."

---

[1] Fed. R. Crim. P. 8(b) provides that:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each court.

3

*Id.* (internal quotation marks and citations omitted). After discussing Rule 8(b) and the reasons the Court has "repeatedly approved joint trials," the Court acknowledged that joinders that may be proper under Rule 8(b) "may prejudice either a defendant or the Government" and thus Federal Rule of Criminal Procedure 14[2] permits co-defendants' trials to be severed. *Id.* at 538.

Rejecting the defendants' argument for a bright-line rule, the *Zafiro* Court held that "[m]utually antagonistic defenses are not prejudicial *per se*," that "Rule 14 does not require severance even if prejudice is shown," but rather, the district court may, in its "sound discretion" tailor "the relief to be granted [under Rule 14], if any." *Id.* at 538-39.

With these general principles in mind, the Court considers Defendants Dixon's and Beasley's arguments for severance.

### B. Defendants Dixon and Beasley Have Not Met Burden for Permissive Severance - Fed. R. Crim. P. 14(a)

Defendants Dixon and Beasley urge the Court to grant a severance to avoid the risk of undue prejudice under Fed. R. Crim. P. 14(a). In *Zafiro*, the Supreme Court announced the test to be applied when deciding whether relief should be granted under Rule 14:

> [W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

---

[2]Fed. R. Crim. P. 14 provides that:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

4

*Id.* at 539 (emphasis added). The greater the risk of prejudice, the "more likely" the trial court is to "determine that separate trials are necessary," but as the Court previously indicated, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

The Sixth Circuit has addressed the defendant's burden under a Rule 14(a) motion to sever. "In order to prevail on a motion for severance [under Rule 14], a defendant must show <u>compelling, specific, and actual prejudice</u> from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) (emphasis added). <u>It is the defendant's burden "to show</u> that an antagonistic defense would present a conflict 'so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that <u>this conflict alone demonstrates that both are guilty</u>.'" *United States v. Gardiner*, 463 F.3d 445, 473 (6th Cir. 2006) (quoting *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992) (emphasis added)).

**1. Defendant Dixon's Prejudicial Spillover Argument is Rejected**

Defendant Dixon attempts to establish prejudice by arguing that, unlike him, his Co-Defendants were associated with former Mayor Kwame Kilpatrick's administration and thus, if tried together with them, he will be prejudiced by spillover from the public antipathy toward the Kilpatrick administration. Defendant Dixon's arguments do not convince the Court that compelling, specific, and actual prejudice would result from this Court's denial of his motion to sever.

It is well settled that a defendant is not entitled to a severance merely because the evidence is stronger or more extensive against a co-defendant. *See Gardiner*, 463 F.3d

5

at 473; *Warner*, 971 F.2d at 1196. "Severance should not be granted where the same evidence is admissible against all defendants, nor should it be granted where evidence is admissible against some defendants but not others." *Gardiner*, 463 F.3d at 473. As observed by the Sixth Circuit, "[j]uries are presumed to be capable of following instructions . . . regarding the sorting of evidence and the separate consideration of multiple defendants." *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002). "Even when a defendant is able to show some potential for jury confusion, such confusion must be balanced against society's interest in speedy and efficient trials." *Id.* at 966-67.

Defendant Dixon's assertions of unfair spillover prejudice disregard the nature of the conspiracy charges against him -- that his connections to his Co-Defendants and the Kilpatrick administration are integral to the government's case against him. As the government stated in its response, even if Dixon were tried separately, the government intends to introduce evidence that Defendant Dixon connected himself to the Kilpatrick administration in order to curry favor with the Kilpatrick administration's Trustees for the Retirement Systems, including Co-Defendant Beasley and Kwame Kilpatrick, who is named as an unindicted co-conspirator with Dixon. His arguments also gloss over the fact that, out of the three Co-Defendants, only Beasley was part of the Kilpatrick administration. The Court also notes that Dixon's claim of prejudicial spillover from Co-Defendants' association with the administration of former Mayor Kwame Kilpatrick is far less persuasive than a similar claim raised by co-defendant Mercado in *United States v. Kilpatrick, et al.*, Case No. 10-20403, and rejected by this Court. (*See, e.g.,* ECF No. 197, Opin. & Order Denying Mot. to Sever). As this Court observed in the *Kilpatrick* case, despite the risk of prejudicial spillover, a defendant may benefit from being able to highlight his lesser role in the charged

conspiracy. (*Id.* at 8, citing and quoting *United States v. Hutchinson*, 573 F.3d 1011, 1030 (10th Cir. 2009) (affirming the trial court's denial of the defendant's Rule 14 motion to sever, observing that the court properly acknowledged that although the evidence introduced against his co-defendants carried the risk of spill-over prejudice against the defendant "the difference in culpability . . . might actually benefit [the defendant] by reinforcing his argument that he was just an 'errand boy,' not a conspirator," and further observing that the trial court properly determined that "the effect of any [spill-over] prejudice could be addressed through appropriate jury instructions."). Defendant Dixon has not, as he must, shown that the jury would not be able to "separate and treat distinctively" the evidence relating to each Defendant. *United States v. Carr*, 5 F.3d 986, 991 (6th Cir. 1993). Likewise, Defendant Dixon has not shown that compelling, specific, and actual prejudice requires severance of his trial from that of his Co-Defendants. *See Gardiner*, 463 F.3d at 473.

### 2. Defendants Dixon's and Beasley's Arguments About Antagonistic and/or Irreconcilable Defenses Do Not Warrant Separate Trials

Defendant Dixon further argues that he should be granted a separate trial because he has antagonistic defenses and an adversarial relationship with respect to Co-Defendants Beasley, Stewart, and Zajac, i.e., that he is a victim and not a co-conspirator. Defendant Beasley's motion argues that his and Co-Defendant Dixon's defenses are not merely antagonistic; rather, they are irreconcilable and thus require separate trials. The Court rejects Defendants' arguments.

The Sixth Circuit requires that a defendant seeking a severance based on a claim of an antagonistic defense must show "that an antagonistic defense would present a conflict

7

'so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" *Gardiner*, 463 F.3d at 473 (quoting *Warner*, 971 F.2d at 1196)). Defendants may pursue different strategies without presenting irreconcilable, logical inconsistencies. *See United States v. Graham*, 484 F.3d 413, 419 (6th Cir. 2007) (citing *Warner*, 971 F.2d at 1196).

Despite Defendants' claims to the contrary, the jury could accept Dixon's theory without concluding that his Co-Defendants, including Beasley, are guilty. This is true even if, as Beasley argues, Dixon acts as a second prosecutor accusing his Co-Defendants of making extortionate demands from him in return for their support of his investment proposals. *See United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990) (observing that "[t]he mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance."). This is because the theory of defense advanced by Dixon – that he refused to agree to the demands for money from his Co-Defendants – is not inconsistent with the other Defendants' assertions of innocence.

Dixon's defense is that he never entered into a conspiracy with any of his Co-Defendants, that he refused to pay them any bribes or kickbacks, and that he had a charitable motive in giving to the Kilpatrick Civic Fund. The jury could accept Dixon's theory without concluding that his Co-Defendants, including Beasley, are guilty. This is because Defendant Beasley, and the other Co-Defendants, will assert that there was no agreement or conspiracy with Dixon, that Dixon never corruptly gave them anything in exchange for their votes as Trustees, and that they lacked any criminal intent because their official acts were not done for a corrupt purpose, but were instead based on the merits. This defense is consistent with Dixon's claim that he never paid any bribes to his Co-

8

Defendants, and that he never entered into any agreement or conspiracy with them. Thus, the jury could accept Dixon's theory of defense, find him not guilty, and also find that Co-Defendant Beasley and the other Co-Defendants are not guilty. In essence, the jury could find that the government failed to prove a corrupt intent by any Defendants, that the government failed to establish a conspiracy among them, or that the government failed to prove any kind of quid pro quo. *See, e.g., United States v. Potashnik*, No. 3:07-CR-289-M, 2008 WL 5272807, *26-28 (N.D. Tex. Dec. 17, 2008) (denying motion to sever where the defendants claimed "they were a victim of the [extortion] scheme rather than a part of it" and finding that this defense was not "irreconcilable with possible defenses raised by co-defendants" about a lack of quid pro quo or that official actions were taken on the merits); *United States v. DiPietro*, No. S5 02 CR. 1237 (SWK), 2005 WL 783357, *5 (S.D. N. Y. Apr. 6, 2005) (concluding that defenses among co-defendants were not mutually antagonistic when co-defendants simultaneously deny criminal intent because "acceptance of one party's defense [does not] preclude the acquittal of another.").

This Court addressed the issue of antagonistic defenses and arguments similar to those raised here in *United States v. Kilpatrick*, Case No. 10-20403. (ECF No. 197, Opin. denying Def. Mercado's Mot. to Sever). There, Mercado (like Dixon here) argued that his defense would be antagonistic, that he would act much like a second prosecutor with regard to his co-defendants, and sought a separate trial. There, Mercado's co-defendants (like Beasley and Zajac here) filed joinders to his motion to sever, agreeing that severance was required in light of Mercado's antagonistic defenses. In *Kilpatrick*, this Court denied Mercado's motion to sever because:

> Mercado's defense – that he is a victim, not a co-conspirator – does not present

9

> a conflict that will allow the jury to unjustifiably infer that all Defendants are guilty. Moreover, despite Mercado's claims to the contrary, a jury could accept his claims without concluding that his Co-Defendants are guilty of the charged offenses.

(*Id.* at 8.) Here, Defendant Dixon is asserting the same defense; and thus, for the same reasons stated in *Kilpatrick*, this Court concludes that Defendants Dixon's and Beasley's motion to sever should be denied. A jury could accept Dixon's defense of being a victim and not a co-conspirator without finding his Co-Defendants guilty.

### 3. Defendant Beasley's Claimed *Bruton* Problem Can Be Cured

Finally, this Court must address Defendant Beasley's argument that a joint trial with Defendant Dixon will expose Beasley to evidence that would not, and could not, be introduced if Beasley were tried separately. Specifically, Beasley points to the government's intent to use two separate statements that Co-Defendant Dixon made to FBI agents (memorialized in FBI 302s) that will be offered to establish that Dixon gave, and Beasley received, a trip to Turks and Caicos Islands (forming the basis for the 18 U.S.C. § 666 charges). Defendant Dixon's statements and testimony, although admissible as an admission of a party opponent, pursuant to Fed. R. Evid. 801(d)(2), are not admissible against Co-Defendant Beasley if Dixon does not testify. *See Bruton v. United States*, 391 U.S. 123 (1968).

Defendant Beasley further argues that, despite the government attempt to avoid a *Bruton* violation by redacting Beasley's name and/or substituting it with the word "Trustee," this is insufficient to cure a potential *Bruton* violation because Count Seven charges Beasley with corruptly accepting and Count Eight charges Dixon with corruptly giving "a vacation to the Turks and Caicos Islands." (Def. Beasley's Mot. at 9.) Beasley

10

acknowledges Sixth Circuit precedent holding that a confrontation clause violation may be avoided when the name of a co-defendant is replaced with a neutral word, but argues that in those Sixth Circuit cases the substituted word or phrase did not "ineluctably implicate" the co-defendant and the same is not true here. (*Id.* at 9-10, discussing *United States v. Vasilakos*, 508 F.3d 401, 408 (6th Cir. 2007); *United States v. Cobleigh*, 75 F.3d 242, 248 (6th Cir. 1996); *United States v. DiCarlantonio*, 870 F.2d 1058, 1062 (6th Cir. 1989)).

The government responds that, contrary to Beasley's arguments above, any *Bruton* problem can be cured. For example, Dixon's statement (which was an oral statement made to an FBI agent and SEC officials) could be redacted to eliminate any reference to Beasley or to the Turks and Caicos Islands. Instead, the FBI agent testifying about Dixon's statements could simply indicate that Dixon admitted paying for "a vacation" from a Detroit pension fund "Trustee." As Beasley acknowledges, the Sixth Circuit has held that a *Bruton* problem can be cured by substituting a neutral term for a co-defendant's name. *See Vasilakos*, 508 F.3d at 408 (observing that "[b]ecause the government was prosecuting multiple defendants for participation in an alleged conspiracy . . . the declarant-codefendants' deposition statements did not ineluctably implicate [co-defendants]."). *See also DiPietro*, 2005 WL 783357 at *5-6 (denying motion to sever where *Bruton* issue cured through redaction). Similar to the neutralizing facts in *Vasilakos*, the government argues here that it has alleged a "multifaceted conspiracy in which several individuals engaged in activities," and thus substituting Defendant's name with neutral noun will serve to avoid a *Bruton* problem. *See id.* By substituting "Trustee" for Beasley and "vacation" for Turks and Caicos, the government argues, Co-Defendant Dixon's challenged statements would not "ineluctably implicate" Beasley. This is true, the government contends, because there will

11

be a great deal of evidence at trial concerning investment sponsors, like Dixon, paying for trips and vacations for various Trustees to a number of different locations.

To illustrate, the government points to the following. Defendant Dixon himself paid for Co-Defendant and Trustee Stewart and his paramour to take a vacation in Naples, Florida. Defendant Dixon also paid for another Trustee and his daughter to travel to the Turks and Caicos Islands along with Stewart (whose trip Dixon paid for as well). Moreover, it is anticipated that Co-Defendant Chauncey Mayfield will testify at trial about paying for vacations for Beasley, DeDan Milton, and Kwame Kilpatrick – all Trustees to the Detroit pension funds. Mayfield's anticipated testimony includes his payment for a vacation (1) for Kwame Kilpatrick and Beasley's son in Tallahassee, Florida; (2) for Beasley and Kwame Kilpatrick in Las Vegas, Nevada; and (3) for Kwame and Carlita Kilpatrick and Bernard Kilpatrick and his girlfriend in Bermuda. There are other references in the Indictment about vacations being paid for Trustees. For example, the investment sponsor identified in the Indictment as the "principal of Company A" paid for a vacation (1) for Trustees Beasley and DeDan Milton in Miami Beach, Florida; and (2) for Stewart and another Trustee to take a trip to the Bahamas. There is also reference to the investment sponsor for Company P paying for vacations for Co-Defendants Zajac and other Trustees in London. (ECF No. 41, 5th Superseding Indict., ¶¶ 17-19, 26.D, 26.E, 26.G, 37).

In sum, the government asserts that a statement by Defendant Dixon that he paid for a "Trustee" to go on "a vacation" to an unspecified destination would not "ineluctably implicate" Co-Defendant Beasley or any other Co-Defendant so as to cause a *Bruton* violation. Defendant Beasley responds that making the proposed redactions in Counts Seven and Eight does not cure the *Bruton* issue because Paragraph 54 in the Indictment

12

also mentions Defendant Beasley and his family and not any other Trustee in connection with a vacation in the Turks and Caicos Islands (ECF No. 41, 5th Superseding Indict., ¶ 54) and use of the word "Trustee" is otherwise insufficient to cure any *Bruton* violation.

Although the Court finds the government's proposed redaction, i.e., "Trustee" for "Beasley," unsatisfactory, it is confident that the government can and will redact in a way that cures any *Bruton* violation, i.e., by replacing "Beasley" with "pension official," "pension fiduciary," or similarly neutral words. Because Defendants Dixon and Beasley have not identified compelling, specific, and actual prejudice that would result from a joint trial that cannot be cured, their motions for severance are DENIED.

### III. Conclusion

For the above-stated reasons, Defendants Dixon's and Beasley's motions to sever are DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 5, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 5, 2014, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol Hemeyer