UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEFFREY BEASLEY, ET AL.,

    Defendants.
_____/

Case No. 12-20030

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANTS ZAJAC'S AND
BEASLEY'S MOTIONS TO STRIKE SURPLUSAGE FROM INDICTMENT [95, 116]**

At a hearing held on April 29, 2014, this criminal matter came before the Court on Defendants Zajac's [95] and Beasley's [116] motions to strike surplusage from the Indictment. Beasley's motion is joined by Defendants Dixon [124], Zajac [128], and Stewart [175]. Zajac's motion is joined by Defendants Beasley [195], and Stewart [175]. Defendants argue that (1) most of the allegations of Count 1 of the Indictment violate the pleading requirements of Fed. R. Crim. P. 7(c), 7(d) and should be stricken as prejudicial surplusage; and (2) certain language in Count 1 will result in undue confusion for the jury and will invite a conviction on unconstitutional grounds because it describes conduct other than bribes or kickbacks contrary to the Supreme Court's decision in *United States v. Skilling*, 561 U.S. 358, 130 S.Ct. 2896 (2010).

For the reasons stated below, Defendants Zajac's and Beasley's motions to strike are DENIED.

**I.    Analysis**

**A. Court Declines to Exercise Discretion to Strike Under Rule 7(d)**

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment "be plain, concise," and provide a "definite written statement of the essential facts constituting the offense charged . . . ." Rule 7(d) provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment," and is thus discretionary. Fed. R. Crim. P. 7(d).

Prejudice alone is not a valid reason to strike. Most indictments do include prejudicial language because they allege the commission of one or more criminal acts by the defendants. As the Sixth Circuit observed in *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993), "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." (Internal quotation marks and citation omitted).

The government's response addresses Defendants Zajac's and Beasley's specific complaints. First, as to Defendants' request to strike any reference in the Indictment to former Detroit Mayor Kwame Kilpatrick, the government responds that there will be evidence at trial that implicates Kilpatrick in the Count 1 conspiracy. For example, Kilpatrick was a trustee on both pension boards; his designee, DeDan Milton, played an active role in the corrupt pension board deals; Kilpatrick, as a co-conspirator, made statements during and in furtherance of the conspiracy; Kilpatrick was a close friend of Defendant Beasley and enjoyed the generosity of Chauncey Mayfield, an asset manager, who profited from his favored position with the Police and Fire Retirement System; Mayfield chartered jets for Kilpatrick, Beasley, and others so that they could vacation in Las Vegas

and Bermuda; and one of the entertainment junkets for Kilpatrick and his entourage was a golf trip to North Carolina as a trip to inspect one of the pension board's real estate assets.

Second, as to Defendants' request to strike references to the Kilpatrick Civic Fund, the government responds that there will be evidence at trial showing that Defendants Zajac and Beasley solicited funds for the Kilpatrick Civic Fund from persons who stood to gain from the actions of the pension boards and were therefore induced to contribute; and Defendant Beasley, in addition to Kwame Kilpatrick, used the Kilpatrick Civic Fund for his own personal benefit.

This Court concludes that the government has persuasively shown how all references to Kwame Kilpatrick and the Kilpatrick Civic Fund will be supported by evidence at trial and thus declines to exercise its discretion under Rule 7(d) to strike.

Third, Defendants argue that the following sentence is prejudicial and should be stricken:

> "The Trustees were obligated by law to act in good faith to best protect the interests of the retirees and beneficiaries."

(5th Super. Indict., Introduction, ¶ 4.) This Court disagrees.

18 U.S.C. § 1346 provides that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." Thus, as the government argues, a prerequisite for honest services in this case includes the obligation to act in good faith and to protect the interests of retirees and beneficiaries, the victims of Defendants' scheme to defraud. Moreover, even if considered merely background information, the sentence should not be stricken. *See United States v. Garton*,

3

No. 3:08-CR-31-JMH, 2009 WL 1424429, *3 (E.D. Ky. May 21, 2009) (refusing to strike language as surplusage and observing that "[i]nclusion of a 'Background' section in an indictment is a permissible method of explaining the context and circumstances surrounding a charged fraud in order for the charges to be understood.").

Finally, Defendant Beasley argues that Paragraph 93 of Count I, discussing alleged losses to the Pension Funds, is unnecessary and highly prejudicial surplusage and thus should be stricken. Paragraph 93 provides that:

> 93. Collectively, as detailed earlier, the funds of the General Retirement System and the Police and Fire System, that support retirees and beneficiaries, suffered losses of at least $84.18 million from investments associated with the scheme to defraud and with the acts of Jeffrey Beasley, Roy Dixon, Paul Stewart and Ronald Zajac in furtherance of the conspiracy.

(5th Superseding Indictment, Count 1, ¶ 93.)

In its response, the government explains why this paragraph is relevant and should not be stricken. Because of the alleged bribes and kickbacks, several bad investments were made. Although the government admits that it is not required to prove that Defendants or their co-conspirators purposely made bad decisions because of the corruption, evidence that they were willing to, and did make very imprudent decisions that benefitted the bribe-givers to the detriment of the pensioners is relevant. The losses suffered by corrupted investments are relevant to showing that the trustees were making decisions based on the bribes they received rather than the prudence and quality of the investments. The Court agrees with the government.

### B. No Need To Strike In Light of *Skilling*

Defendants also seek to strike the underlined language in Paragraphs 2 and 3 of

4

Count 1:

### THE SCHEME TO DEFRAUD

2. From approximately January 2006 to April 2009, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendants, **JEFFREY BEASLEY, ROY DIXON, PAUL STEWART,** and **RONALD ZAJAC**, conspired with each other and with others to devise a scheme to defraud present and retired employees of the City of Detroit who contributed to the General Retirement System and the Police and Fire Retirement System of their right to the honest, <u>faithful, and impartial</u> services of Kwame Kilpatrick, **JEFFREY BEASLEY, PAUL STEWART**, *Trustee B, Trustee C*, and *City Official A*, including their right <u>to the conscientious, loyal, faithful, disinterested, unbiased service, to be performed free of deceit, undue influence, conflict of interest, self-enrichment, self-dealing, concealment, bribery, fraud and corruption</u>, and to (1) cause matters and things to be placed in any post office and authorized depository to be sent and delivered by the Postal Service, (2) cause matters to be delivered by commercial interstate carrier according to the direction thereon, and (3) cause writings, signals, and sounds to be transmitted by wire in interstate and foreign commerce, for the purpose of executing and attempting to execute the scheme and artifice, as set forth below.

### OBJECTS OF THE SCHEME TO DEFRAUD

3. It was an object of the scheme to defraud the employees and retirees of the City of Detroit that Kwame Kilpatrick, **JEFFREY BEASLEY, PAUL STEWART**, *Trustee B, and Trustee C* used their positions as Trustees of the Retirement Systems to personally enrich themselves and other co-conspirators by demanding or accepting bribes and kickbacks in the form of cash, travel, meals, golf clubs, drinks, tickets to sporting events, gambling money, tickets to shows, Playboy party tickets, hotel stays, entertainment, Las Vegas concert tickets, trips, designer watches, massages, limousine service, private plane flights, and other things of value from persons who dealt with the Retirement Systems which acted on their proposals or requests. **JEFFREY BEASLEY, PAUL STEWART**, <u>and their co-conspirators concealed and did not disclose these bribes and kickbacks</u>.

(5th Super. Indict., Count 1, ¶¶ 2-3.)

Defendants argue that the highlighted language in these paragraphs will result in

undue confusion for the jury and will invite a conviction on unconstitutional grounds because it describes conduct other than bribes or kickbacks contrary to the Supreme Court's decision in *Skilling*, 130 S. Ct. at 2931-33. This argument is rejected.

The government concedes that it must prove that the goal of the conspiracy was to defraud the pensioners through bribes and kickbacks, which are encompassed by the fraud. However, the government argues, the terms that Defendants want stricken and evidence of bribes and kickbacks are not mutually exclusive. If a trustee takes a bribe, he is depriving the victims of their right to the conscientious, loyal, faithful, disinterested, unbiased service. Correspondingly, the taking of bribes is an act of deceit, undue influence, conflict of interest, self-enrichment, self-dealing and concealment. This Court agrees with the government.

By citing *Skilling*, Defendants are conflating charging language with the elements of the crime. There is no dispute that one of the elements that the government must prove is that Defendants conspired to deprive the pensioners of their right to honest services through bribes and kickbacks. This, however, does not render irrelevant these other types of fraudulent conduct which provide evidentiary support for the alleged bribery and kickback scheme. For example, acts of deceit, such as pretending a vacation is a due diligence trip, is one way of proving that the trip was indeed a bribe or kickback instead of a legitimate and reasonable task.

## II. Conclusion

For all these reasons, Defendants Zajac's and Beasley's motions to strike surplusage are DENIED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 7, 2014

## CERTIFICATION

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 7, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager