UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JEFFREY BEASLEY, ET AL.,

        Defendants.

_____/

Case No. 12-20030

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT BEASLEY'S MOTION FOR SEVERANCE OF COUNTS 10-13 AND/OR SEPARATE TRIAL FROM DEFENDANT DIXON [115]**

At a hearing held on April 29, 2014, this criminal matter came before the Court on Defendant Beasley's motion for severance of Counts 10-13 and/or a separate trial from Co-Defendant Dixon [115], joined by Defendant Zajac [128].  Count 10 charges Dixon with conspiring to commit wire fraud in violation of 18 U.S.C. § 1349, Counts 11 and 12 charge Dixon with committing wire fraud in violation of 18 U.S.C. § 1343, and Count 13 charges Dixon with structuring financial transactions in violation of 31 U.S.C. § 5324(a)(3). Defendant Beasley argues that Counts 10-13 are improperly joined under Fed. R. Crim. P. 8(b) because they involve only Defendant Dixon and allege transactions that are unrelated to the conspiracy charged in Count 1 and the substantive offenses involved in the Count 1 conspiracy that are alleged in Counts 2-9.[1]

_____

[1]There is no need to address Beasley's alternative argument, that his trial should be severed from that of Co-Defendant Dixon, because that was the subject of separate motions [68, 79] on which this Court has already issued an Opinion and Order.

Defendant Beasley's motion is DENIED.  There is no misjoinder under Rule 8(b). Counts 10-13 relate to Dixon's embezzlement of pension funds that he secured during and after bribing pension fund Trustees, including Beasley and Stewart.  Moreover, Counts 10-13, alleging charges against Dixon, arose from and are intertwined directly with the honest services fraud conspiracy alleged in Count 1 and are therefore properly joined with Counts 1-9.

## I.   Analysis

### 1.   Legal Standard

Under Fed. R. Crim. P. 8(b), an "indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count."

The Sixth Circuit articulated the standard for joinder under Rule 8(b) in *United States v. Hatcher*, 680 F.2d 438 (6th Cir. 1982):

> The joinder of multiple defendants is proper under Rule 8(b) only if each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions, even if all counts of the indictment include a common defendant.

*Id.* at 441.

The Sixth Circuit has held "that this rule can, and should, be broadly construed in favor of initial joinder, because of the protection Rule 14 affords against unnecessarily prejudicial joinder." *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987) (internal quotation marks and citations omitted).  In *Swift*, the Sixth Circuit found that the counts at issue there were

2

properly joined under Rule 8(b) "because they [were] logically interrelated and involve[d] overlapping proof." *Id.* The *Swift* Court further observed that, "[i]n the decision whether to join, the predominant consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." *Id.*

## 2. Discussion

The government asserts that Dixon bribed various Pension System Trustees in an effort to get his investment proposals approved and to ensure that his requests for capital calls would be approved. While bribing various Trustees, including Co-Defendants Beasley and Stewart, in order to secure a $20 million investment by the City's and the Police and Fire's Retirement Systems, Dixon was embezzling this same pension money while under little, if any, oversight from those same Trustees. Thus, the government argues, Counts 2-13 of the Indictment arose from the same transaction alleged in Count 1 and are logically interrelated. If Dixon had not engaged in the honest services fraud conspiracy by paying bribes to Beasley, Stewart, and other co-conspirators in order to secure the $20 million investment from the Detroit pension funds, Dixon would not have been able to embezzle that same pension money through the offenses alleged in Counts 10-13. As a result, Counts 10-13 naming Defendant Dixon alone, are properly joined with Counts 1-9.

The government further argues that severance of Counts 10-13 would frustrate and defeat the general preference for trying counts together that were indicted together. And, severance would impose greater costs on judicial and government resources by requiring an additional trial for Dixon.

This Court agrees with the government. Counts 10-13 are not improperly joined under

3

Rule 8(b).

Count 1 names all four Defendants as members of a conspiracy to commit honest services mail and wire fraud.  It alleges that Dixon and Dixon's business partner paid bribes and kickbacks to Co-Defendants Beasley and Stewart, as well as other unindicted co-conspirators Trustees, including former Mayor Kwame Kilpatrick.  (5th Superseding Indictment, Count 1, ¶ 4.)  Dixon paid these bribes in order to secure the approval of the Trustees for Dixon's investment proposals and capital calls for Onyx Capital Advisers and PR Investment Group.  (*Id.*)  Dixon's company, Onyx Capital Advisers, was a private equity company that was supposed to make investments in medium-sized Midwestern manufacturing companies.  Instead, Dixon invested the vast majority of the money in an Atlanta-based used car dealership that specialized in customers with bad credit.  (*Id.* at ¶ 58.)  The Trustees voted to approve a $20 million investment by the pension funds in Onyx Capital Advisers.  During the conspiracy, the Trustees had to approve capital calls made by Dixon for disbursement of the $20 million.  (*Id.* at ¶ 64.)  The pension funds suffered a $20 million loss on their investment with Dixon in Onyx Capital Advisers.  (*Id.* at ¶¶ 75-76.)  Despite the fact that Dixon could not show and did not deliver returns on the investments made by Onyx Capital Advisers, the Trustees, including Defendants Beasley and Stewart, continued to approve capital calls drawing on more of the $20 million in committed pension fund money by Dixon.

After receiving the investment monies from the two Detroit pension funds, as well as a smaller investment by a City of Pontiac pension fund, Dixon and his business partner embezzled $3 million of the money invested by the pension funds.  Dixon's embezzlement of the pension money is alleged in Count 1 as part of the methods used to accomplish the

4

scheme to defraud.  (*Id.* at ¶ 74.)  Dixon's embezzlement of pension fund money is also alleged as part of the manner and means of the wire fraud conspiracy alleged in Count 10. Counts 10-13 relate to this embezzlement, alleging that Dixon conspired with the owner of the used car dealership o engage in wire fraud (*id.*, Count 10), committed two substantive acts of wire fraud (*id.*, Counts 11, 12), and engaged in structuring as part of the embezzlement (*id.*, Count 13).  The owner of the used car dealership, who is also an unindicted co-conspirator in both Count 1 and Count 10 (*id.*, Count 1, ¶¶ 60, 69, 71; Count 10, ¶ 2), also paid bribes in the form of Kilpatrick Civic Fund donations at the urging of Dixon.  (*Id.*, Count 1, ¶¶ 59-60, 68-69.)  Dixon's (and his partner's) bribery of the Trustees led directly to Dixon's access to the pension money through capital calls, which Dixon and his partner then embezzled.  (*Id.*, Count 1, ¶ 64.)  During the course of Dixon's embezzlement, the Trustees were supposed to be overseeing the $20 million investment, but there was little or no oversight, especially by the Trustees who had been bribed, and the pension funds suffered a complete loss.  (*Id.*, Count 1, ¶¶ 75-76.)

Joinder is proper because Counts 1-13 are logically interrelated.  Review of the Indictment shows that Dixon's efforts (1) to secure the pension funds' investment through bribery, and (2) to ensure that Trustees overseeing the investment would not ask questions about his failure to produce investment returns are logically interrelated with his embezzlement of those pension funds.  Dixon's bribery made his embezzlement possible. In *United States v. Johnson*, the Sixth Circuit rejected a similar claim of misjoinder, finding "the mail fraud was logically interrelated with the other acts charged in the indictment" because one fraudulent scheme made a second scheme possible.  *Johnson*, 763 F.2d 773, 776 (6th Cir. 1985).  The same is true here.  Counts 10-13 are logically related to Count 1

5

and the other bribery Counts.

Moreover, severance would defeat Rule 8(b)'s goal of trial economy and convenience. *See* Swift, 809 F.2d at 322. *See also United States v. Frost*, 125 F.3d 346, 390 (6th Cir. 1997) (same). If Defendant's motion was granted, the government would be forced to present evidence of the transaction that gives rise to Counts 1-13 – the Pension Funds' $20 million investment in Dixon's company, Onyx Capital Advisers – two separate times. It would also be forced to present evidence of Dixon's bribery at both trials because that bribery was integral to the honest services fraud conspiracy and the wire fraud conspiracy. For similar reasons, the *Frost* court upheld the district court's denial of the defendant's motion to sever even though the indictment alleged multiple counts against multiple defendants involving different schemes, finding that they were all sufficiently related.

## II.   Conclusion

For the above-stated reasons, Counts 10-13 are properly joined with Counts 1-9 under Fed. R. Crim. P. 8(b). Accordingly, Defendant Beasley's motion is DENIED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 7, 2014

CERTIFICATION

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 7, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager