UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEFFREY BEASLEY, ET AL.,

    Defendants.

                                        /

Case No. 12-20030

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANTS BEASLEY'S AND
DIXON'S MOTIONS TO DISMISS COUNTS SEVEN AND EIGHT [112, 120]**

At a hearing held on April 29, 2014, this criminal matter came before the Court on Co-Defendants Beasley's and Dixon's motions seeking to dismiss Counts 7 and 8 of the Indictment [112, 120]. Beasley argues that Count 7 should be dismissed because it fails to allege a jurisdictional element of 18 U.S.C. § 666; specifically, it fails to allege: (1) his agency (the City of Detroit as opposed to the City's Pension Systems), (2) what governmental entity (the City as opposed to its Pension Systems) received $10,000 in federal benefits in any one year, and (3) which agency's business (the City's as opposed to its Pension System's) Co-Defendant Dixon intended to influence. Stated otherwise, Beasley argues that, because the Indictment is charging him with accepting a bribe in exchange for his influence as a Trustee of the Pension Boards, not for acts he performed in his role as Treasurer or agent of the City of Detroit, the Indictment must also allege that each Retirement System (as opposed to the City of Detroit) was the <u>direct</u> beneficiary of more than $10,000 in federal benefits to satisfy the jurisdictional element of § 666(a).

Dixon similarly argues that Count 8 should be dismissed for all the reasons addressed in Beasley's motion.

For the reasons that follow, Defendants Beasley's and Dixon's motions to dismiss Counts 7 and 8 are DENIED.

**I.     Analysis**

    **A.  Counts 7 and 8**

Count 7 of the Indictment charges Defendant Beasley with accepting bribes/illegal gratuities in violation of 18 U.S.C. § 666(a)(1)(B):

> In or about August 2007, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendant JEFFREY BEASLEY, did knowingly and corruptly agree to [sic] accept and accept a vacation to the Turks and Caicos Islands for himself, his wife, and their children from ROY DIXON, intending to be influenced and rewarded in connection with his official duties regarding a business, transaction, or series of transactions of the City of Detroit, involving $5,000 or more, that is, investments and proposed investments with *Onyx Capital Advisers* and *PR Investment Group*.

(5th Superseding Indictment, Count 7.)

Count 8 of the Indictment charges Defendant Dixon with payment of bribes/illegal gratuities in violation of 18 U.S.C. § 666(a)(2):

> In or about August 2007, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendant ROY DIXON, did knowingly and corruptly offer and give JEFFREY BEASLEY a vacation to the Turks and Caicos Islands for BEASLEY, his wife, and their children, intending to influence and reward JEFFREY BEASLEY regarding a business, transaction, or series of transactions of the City of Detroit, involving $5,000 or more, that is, investments and proposed investments with *Onyx Capital Advisers* and *PR Investment Group*.

(5th Superseding Indictment, Count 8.)

    **2.  Discussion**

Because their arguments are identical and the statutory sections are substantively identical, the Court's analysis will focus on the elements at issue in Count 7 charging a violation of 18 U.S.C. § 666(a)(1)(B).

### A. Beasley was the City's agent when Acting as Trustee for City's Pension Boards

Defendant Beasley concedes that (1) by virtue of being City Treasurer, he was an agent of the City, (2) but for his position as City Treasurer, he would not have been a Trustee for the City's Pension Systems, (3) the Pension Systems are part of the City government, and (4) the City of Detroit received federal benefits in excess of $10,000 in any one year period. Nonetheless, Beasley argues that he was not the City's agent when he was acting in his role as Trustee of the City's Pension Systems. Beasley is mistaken.

A Fifth Circuit Court of Appeals decision is directly on point. In *United States v. Moeller*, 987 F.2d 1134 (5th Cir. 1993), the defendants were employees of the Texas Federal Inspection Service ("TFIS"). The TFIS performed services for the Texas Department of Agriculture ("TDA") and was a creation of the TDA and the U.S. Department of Agriculture. *Id.* at 1135. The defendants in *Moeller* filed a motion to dismiss charges in their federal indictment for violation of 18 U.S.C. § 666 which were predicated "upon their actions as TFIS officials." *Id.* at 1136. The district court granted the defendants' motion, "finding that TFIS did not receive $10,000 in benefits from a federal assistance program as required by section 666(b)" and concluded that "the defendants' misconduct as agents of TFIS was not within the court subject matter jurisdiction." *Id.*

The Fifth Circuit reversed the district court's decision. It clarified that the Court's role is to "determine whether the defendants were agents of TDA as they performed their

3

functions for TFIS . . . ." *Id.* at 1137.

> Taking the words of the statute at face value it is apparent that for purposes of the conduct proscribed by section 666(a)(1) the defendant must be an agent of the agency receiving federal benefits in excess of $10,000. <u>The critical inquiry is not the role of the TFIS and whether it imposes a separate entity shielding any violations of the statute, but the role of the defendants</u>.

*Id.* (internal footnote omitted and emphasis added). "If in their roles at TFIS, [the defendants] were agents of TDA, then TDA is a relevant agency for purposes of § 666(b)." *Id.*

The *Moeller* court then examined the cooperative agreement between the TDA and USDA that created the TFIS "[t]o determine whether TFIS employees were agents of TDA." *Id.* at 1137-38. Because the TFIS "performed discretionary functions on behalf of TDA," "enforced regulations promulgated by TDA," and remitted funds it collected to the state treasury, the *Moeller* court concluded "that for purposes of § 666," the defendants, "in their positions at TFIS, were agents of TDA – an agency that receives more than $10,000 per year in benefits from federal assistance programs." *Id.* at 1138.

A recent decision from the Eleventh Circuit Court of Appeals follows *Moeller* and addresses the core "agency" issue presented in Defendants' motions. *See United States v. White*, No. 8-11-CR-318-T-27TGW, 2012 WL 37363 (M.D. Fla. Jan. 6, 2012), *aff'd*, ___ F. App'x ___, 2014 WL 1274627 (11th Cir. Mar. 31, 2014). In *White*, the defendant was charged in a ten-count indictment with conspiracy to commit bribery, accepting bribes, conspiracy to commit mail and wire fraud, honest services mail and wire fraud, and making a false statement to the FBI. As the district court explained, "[t]he essence of the conspiracy and bribery charges was that as a Hillsborough County Commissioner and Chairman of the Hillsborough County Public Transportation Commission ('PTC'), Defendant

corruptly solicited and accepted cash bribes to have a towing company certified by the PTC so that it would be eligible to be placed on the lucrative Hillsborough County Sheriff's Office's rotational towing list, and that once the certification was obtained, Defendant would assist the towing company in being placed on the Sheriff's towing list." *White*, 2012 WL 37363 at *1.

After being convicted on most charges, the defendant in *White* moved for a judgment of acquittal. Similar to Defendants Beasley's and Dixon's arguments here, "White argued that he had acted as an agent for the Transportation Commission and there was no evidence that agency had received more than $10,000 in benefits from the federal government, as required under section 666." *White*, ___ F. App'x ___, 2014 WL 1274627 at *4 (citing 18 U.S.C. § 666(a)(1)(B), (b)). Similar to the government's arguments here, the government argued in *White* that "White had been an agent of the County as its elected County Commissioner and its delegate to the Transportation Commission, and that the County had received more than $10,000 in federal funds." *Id*. Relying on *Moeller*, "[t]he district court denied White's motion for a judgment of acquittal." *Id*. at ___, 2014 WL 1274627 at *5.

The district court observed that, in 18 U.S.C. § 666(d)(2), the term "agent" "is broadly defined as a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." *White*, 2012 WL 37363 at *2 (internal quotes and citation omitted). It then tackled the core question – was the defendant an agent of the governmental unit or government agency that received in excess of $10,000 in federal funds in a one-year period.

5

In answering that core question, the district court rejected arguments similar to those raised here by Defendants Beasley and Dixon – that the Indictment must allege that each Retirement System (as opposed to the City of Detroit) was the <u>direct</u> beneficiary of more than $10,000 in federal benefits to satisfy the jurisdictional element of § 666(a). Similar to the defendant in *White*, Defendants Beasley and Dixon focus on the governmental agency that did not receive direct federal funding. As the district court found in *White*, this focus "is misguided." *Id.* at *3. The focus should be on the defendant and the role he was serving while performing functions at that governmental agency. *Id.* With that focus in mind, the district court "ruled that there was sufficient evidence to establish that White had been an agent of, and had been influenced in connection with the business of, the County to have towing companies certified and to ensure that the Sheriff's Office used towing companies that had been certified lawfully." *White*, ___ F. App'x ___, 2014 WL 127467 at *4.

On appeal, White challenged his convictions under 18 U.S.C. § 666(a)(1)(B), arguing "that the government failed to prove that he acted as an agent of Hillsborough County or that he accepted bribes to be influenced in connection with its business." *Id.* at ___, 2014 WL 1274627 at *6. Rather, White contended, "he acted as an agent of the Transportation Commission, which was autonomous of the County and did not receive any federal funding." *Id.* The Eleventh Circuit Court of Appeals rejected White's arguments, finding sufficient evidence to support his convictions. *Id.*

The Eleventh Circuit began its analysis by observing that when determining "whether an official is an agent of a particular governmental agency, we examine whether the official is authorized to act on behalf of that agency." *Id.* (internal quotation marks and citations

omitted). It further observed that "[t]he role of an official is best determined by examining his functions, which can be ascertained from a number of sources, including the relationship between the official and the agency and the scope of the official's authority." *Id.*

Applying those legal principles to the evidence presented by the government at White's criminal trial, the Eleventh Circuit held that there was sufficient evidence "to support the finding of the jury that White acted as an agent of Hillsborough County." *Id.* at ___, 2014 WL 1274627 at *7. As it explained:

> Undisputed evidence established that White was appointed to the Transportation Commission because he was a County Commissioner and that White's role was that of a delegate "act[ing] on . . . behalf" of the County on the Transportation Commission. *See* 18 U.S.C. § 666(d)(1) [providing definition of "agent"]. Although the Transportation Commission operated autonomously, White did not do so. The evidence established that White was fulfilling one of his obligations to the County by serving on the Transportation Commission, and his service on that entity was inseverable from his function as a County Commissioner.

*Id.*

The same is true here. Defendant Beasley was appointed to be a Trustee of the City's Pension Systems because he was the City's Treasurer, and Beasley's role was that of a delegate acting on behalf of the City while serving as a Trustee of its Pension Systems. The City's Pension Systems were created, maintained, and governed by the City's charter. (Gov't Resp., Ex. A, 1997 City Charter, Arts. 11 and 13.) The City charter specified the composition of each Pension System's board, including the requirement that several Trustees on each be city officials. (*Id.* at Art. 11, § 11-103.) It also provided that benefits administered by the Pension Systems were contractual obligations of the City. (*Id.* at § 11-101(3), providing that "the accrued financial benefits of active and retired city employees,

7

being contractual obligations of the city, shall in no event be diminished or impaired.") Thus, a loss to the Pension Systems caused by a bad investment decision would be a loss to the City because the City was contractually obligated if the Pension Systems became insolvent. Examination of the City's then-charter supports the conclusion that the Pension Systems and City-appointed Trustees (like Defendant Beasley) serving on their boards were agents of the City carrying out City business.

Beasley's arguments to the contrary ignore his role as Trustee as set out in Detroit's then-charter. It is solely by virtue of being the City's Treasurer that Beasley also served as a Trustee of the Pension Systems. (Gov't Resp., Ex. A, Charter § 11-103.1(c), 2(c).) It was the City of Detroit, not the Pension Systems that paid Beasley for his work as a Trustee. For all the reasons discussed here, when Beasley, in his position as Trustee, voted on the Onyx and PR Group investments discussed in the Fifth Superseding Indictment, he did so as an agent of the City, a municipal government that received in excess of $10,000 in federal funds in a one-year period. Applying the rationale in *White* and *Moeller* here, this Court concludes that Defendant Beasley was an agent of the City while performing his duties as a Trustee of that City's Pension Systems.[1]

In relevant part, 18 U.S.C. § 666(a)(1)(B) provides that:

> [Whoever] being an agent of . . . a . . . local . . . government, or any agency thereof . . . corruptly . . . accepts . . . anything of value from any person, intending to be influenced or rewarded in connection with any business . . . of such . . . government, or agency involving any thing of value of $5000 or more, . . . [if] the government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal

---

[1] In light of this conclusion, it is not necessary for the Court to consider the government's additional argument that the Pension Systems received federal funds indirectly through the City of Detroit's departments.

8

Program . . .

is guilty of an offense. Section 666(a)(2) is identical, except that it applies to the giver rather than the receiver of the bribe.

The elements that the government must prove for the alleged § 666(a)(1)(B) violation are:

1. Beasley was an agent of a government or agency;

2. Within a one-year period, the government or agency received more than $10,000 of federal benefits;

3. Beasley accepted or requested something of value from another person;

4. Beasley acted corruptly with the intent to be influenced or rewarded in connection with some business of the government or agency; and

5. The value of the business to which the payment related was at least $5,000.

See Seventh Cir. Pattern Crim. Jury Instr. at 205, 18 U.S.C. § 666(a)(1)(B) Bribery Concerning Federally Funded Program - Elements.

The Indictment properly alleges all elements of a § 666(a)(1)(B) violation. Defendant Beasley, as City Treasurer, was an agent of the City of Detroit, thus satisfying element one of § 666(a)(1)(B). By virtue of his position as City Treasurer, Beasley served as a Trustee of each of the City's Pension Systems – the General Retirement System (for City employees) and the Police and Fire Retirement System (for City police and firefighters) – which are components of that City's government. (5th Superseding Indictment, ¶ 1.) But for his position as the City's Treasurer, Beasley would not have been a Trustee of the Pension Systems. (*Id.* at ¶¶ 8, 10, 11; Gov't Resp. at 6 n. 1, 2 and Ex. A, Charter.) It is undisputed that the City of Detroit received federal benefits in excess of $10,000 in any one

9

year period, thus satisfying element two of § 666(a)(1)(B). (*Id.* at ¶ 13.)

As a Trustee, Defendant Beasley considered Co-Defendant Dixon's proposed and actual investments made by Detroit's Pension Systems. Those investment decisions affected City employee benefits and thus were the business of both the City and its Pension Systems. (*Id.* at ¶ 5.) Count 7 alleges that Beasley accepted a tropical vacation corruptly and intending to be influenced with respect to Pension System investments, which are transactions involving the City of Detroit, and these transactions had a value greater than $5,000, thus satisfying elements 3 through 5 of § 666(a)(1)(B).

### 2. The Scope of § 666 Is Not As Narrow As Defendants Claim

Defendants' arguments about the proper interpretation of 18 U.S.C. § 666 conflict with prevailing Supreme Court precedent. In 1997, the Court refused to narrow the scope of 18 U.S.C. § 666(a)(1)(B). It held that, "as a matter of statutory construction, § 666(a)(1)(B) does not require the Government to prove the bribe in question had any particular influence on federal funds and that under this construction the statute is constitutional as applied in this case." *Salinas v. United States*, 522 U.S. 52, 61 (1997). Then, in 2004, the Court addressed a facial challenge to § 666. In *Sabri v. United States*, 541 U.S. 600 (2004), the defendant had moved before trial "to dismiss the indictment on the ground that § 666(a)(2) [was] unconstitutional on its face for failure to require proof of a connection between the federal funds and the alleged bribe, as an element of liability." *Id.* at 603-04. The defendant won on that argument in the district court but lost on appeal to the Eighth Circuit. The Supreme Court granted certiorari "to resolve a split among the Courts of Appeals over the need to require connection between forbidden conduct and federal funds." *Id.* at 604. The *Sabri* Court affirmed the Eighth Circuit's decision holding that § 666(a)(2) was not

constitutionally deficient "in the absence of an express requirement to prove some connection between a given bribe and federally pedigreed dollars, and that the statute was constitutional under the Necessary and Proper Clause in serving the objects of the congressional spending power." *Id.* Thus, to bring charges under § 666(a)(2), the government is not required to allege or prove a connection between forbidden conduct and federal funds.

The Sixth Circuit had already reached this conclusion before *Sabri* was decided. *See United States v. Dakota*, 197 F.3d 821, 826 (6th Cir. 1999) (rejecting the defendant's argument that "18 U.S.C. § 666 requires that the government demonstrate a nexus between the alleged bribes and the federal funding received by [the Keweenaw Bay Indian Community];" observing that in *United States v. Valentine*, 63 F.3d 459 (6th Cir. 1995), [the Sixth Circuit] construed another provision of § 666 and found that the statute requires no relationship between the illegal activity and the federal funding," and thus affirmed the district court's decision that "18 U.S.C. § 666 does not require a nexus between the alleged bribes and the federal funding received by KBC."). Defendants' argument that *Valentine* holds otherwise is mistaken.

Finally, Defendants' reliance on a Ninth Circuit decision from 1993 is misplaced. Citing *United States v. Wyncoop*, 11 F.3d 119 (9th Cir. 1993), Defendant Beasley argues that, absent an allegation and proof that the City's Pension Systems directly received $10,000 in federal funds in any one-year period, the government cannot successfully bring charges under 18 U.S.C. § 666. The decision in *Wyncoop* does not support that argument. Rather, consistent with the decisions discussed above, the *Wyncoop* court acknowledged that "in order to obtain jurisdiction of a defendant under section 666, the government need

not prove that the funds actually stolen by the defendant were of federal origin. So long as the defendant is an agent of an organization that receives more than $10,000 in federal benefits in a given year, it is not necessary that the particular funds stolen be among those 'benefits.'" *Id.* at 122. The defendant's conviction in *Wyncoop* was reversed because he "was employed by an entity that never received any federal funds under the [federally-subsidized] loan programs" at issue. Rather, the defendant's employer, Trend College, "received only the indirect benefits associated with increased enrollment of students receiving private loans induced by guarantees to the private lenders." *Id.* Thus, the *Wyncoop* court concluded, to apply § 666 to the defendants embezzlement of about "$65,000 from Trend College, a private technical school where he was employed," stretched § 666 beyond its intended purpose. *Id.* at 120, 122-23. Defendant Beasley cannot make the same arguments here that persuaded the *Wyncoop* court to determine that 18 U.S.C. § 666 did not apply to the defendant's embezzlement crime.

## II. Conclusion

For the above-stated reasons, Defendants Beasley's and Dixon's motions to dismiss Counts 7 and 8 of the Indictment are DENIED.

        s/Nancy G. Edmunds  
        Nancy G. Edmunds  
        United States District Judge

Dated: May 7, 2014

## CERTIFICATION

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 7, 2014, by electronic and/or ordinary mail.

       s/Carol J. Bethel
       Case Manager