UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEFFREY BEASLEY, ET AL.,

    Defendants.

_____/

Case No. 12-20030

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT STEWART'S MOTION TO STRIKE ALLEGATIONS RE: STEWART-DIXON RELATIONSHIP AND RE: DIXON CAMPAIGN CONTRIBUTIONS TO STEWART AND DISMISS COUNT ONE [105]**

At a hearing held on April 29, 2014, this criminal matter came before the Court on Defendant Stewart's motion to strike allegations regarding the Stewart-Dixon relationship and regarding Dixon's campaign contributions to Stewart and dismiss Count 1 [105], joined by Defendants Zajac [128], Dixon [124], and Beasley [195]. Defendant Stewart, a former trustee of the Detroit Police and Fire Retirement System asks the Court to first strike all language in Count 1 of the Indictment detailing campaign contribution/bribes Dixon made to Stewart and all allegations regarding Stewart's relationship with Dixon because the Indictment fails to allege facts (1) showing that Stewart made an explicit promise to perform a specific act in connection with Dixon's campaign contribution as required by Supreme Court and Sixth Circuit precedent, i.e., *Evans v. United States,* 504 U.S. 255 (1992); *McCormick v. United States*, 500 U.S. 257 (1991); *United States v. Terry*, 707 F.3d 607 (2013), *cert denied,* ___ U.S. ___, 134 S. Ct. 1490 (2014); and (2) satisfying the definition

of a bribe as recognized in *Skilling v. United States*, 561 U.S. 358 (2010). Stewart then asks the Court to dismiss Count 1 because, (1) after all this challenged language is stricken, the allegations that Dixon gave Stewart and his mistress a free trip to Florida is "relatively minor" and too far removed from Stewart's official acts as a trustee to sustain the charged conspiracy offense; and (2) Stewart's Fifth Amendment right to a grand jury indictment was violated by the grand jury's consideration of Dixon's campaign contributions to Stewart.

Defendant Stewart's motion is DENIED. His claims lack merit and are based on erroneous readings of the Supreme Court's decisions in *McCormick, Evans*, and *Skilling* and the Sixth Circuit's decision in *Terry*.

I. Analysis

  A. The Indictment Properly Alleges A Conspiracy to Commit Honest Services Mail and Wire Fraud

Count 1 of the Indictment alleges that Defendant Stewart conspired with Co-Defendant Dixon and others to commit honest services mail and wire fraud, in violation of 18 U.S.C. § 1349. As the Sixth Circuit observed in *Terry*, "[a]n indictment must contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged' and a 'citation of the statute . . . that the defendant is alleged to have violated.'" *Terry*, 707 F.3d at 611 (quoting Fed. R. Crim. P. 7(c)). Count 1 does just that. It cites the statutes Defendant is alleged to have violated: 18 U.S.C. §§ 1349 (conspiracy), 1341 (mail fraud), 1343 (wire fraud), and 1346 (intangible right to honest services). In its Introduction and in Count 1, the Indictment describes in great detail (over 35 pages) Defendants' honest services fraud scheme, including facts establishing the essential elements of the charged

2

offense. Thus, contrary to Stewart's arguments here, the Indictment complies with Fed. R. Crim. P. 7(c).

Count 1 also complies with the Supreme Court's decision in *Skilling*. In *Skilling*, the Supreme Court held that 18 U.S.C. § 1346 only criminalizes honest services fraud schemes that involve bribery and kickbacks. *Skilling*, 130 S. Ct. 2933. Count 1 alleges that Defendant Stewart accepted bribes and kickbacks from Co-Defendant Dixon. (5th Superseding Indictment, Count 1, "The Scheme to Defraud," ¶¶ 3-5.)

### B. The Indictment Properly Alleges Honest Services Fraud Bribery With Regard to Dixon's Campaign Contributions to Stewart

Relying on the Supreme Court's decisions in *McCormick* and *Evans* and the Sixth Circuit's decision in *Terry*, Defendant Stewart argues that campaign contributions cannot be considered bribes or kickbacks unless there is "an *explicit promise* that the contribution is being provided in return for the official to perform a *specific act*." (Def.'s Mot. at ii.) Defendant Stewart's argument is premised on an erroneous reading of *McCormick, Evans,* and *Terry* and is thus rejected.

In *Terry*, the Sixth Circuit confronted and rejected arguments similar to those raised here by Stewart. There, an Ohio state court judge was running for reelection and "sought the help of County Auditor Frank Russo, a presence in Cleveland politics." *Terry*, 707 F.3d at 610. Russo agreed and "Terry knew that Russo was helping him behind the scenes." *Id.* Neither knew, however, "that the FBI was investigating Russo on corruption charges and that federal agents had tapped Russo's phones." *Id.* In July 2008, one year after "Russo's political action committee donated $500 to Terry's reelection campaign" and "purchased around $700 worth" of reelection supplies and "Russo had his official staff work

for Terry's reelection campaign during business hours," the FBI captured a phone conversation between Russo and Terry. *Id.* Russo "told Terry to deny" two pending motions for summary judgment, "and Terry said he would." *Id.* "In the same conversation, the two men also discussed Russo's attendance at future fundraisers for Terry's reelection campaign." *Id.* Terry did as Russo requested.

Terry was subsequently indicted by a federal grand jury on five political corruption charges. *Id.* Similar to Count 1 here, "Count One alleged that Terry conspired with Russo to commit mail fraud and honest services fraud." *Id.* Three other counts "alleged that he committed honest services fraud by accepting gifts, payments, and other things of value from Russo and others in exchange for favorable official actions." *Id.* (internal quotation marks and citation omitted). "Each honest services fraud count was tied to a mailed document: Counts Three and Four stemmed from checks Russo's political action committee wrote to pay for Terry's [reelection] stationery, envelopes and car magnets, while Count Five stemmed from a thank you note Terry wrote to Russo." *Id.* at 611. "After a five-day trial, a jury convicted Terry on Counts One, Three and Four," and he was sentenced to "63 months in prison on each count, to be served concurrently." *Id.* Terry's conviction was upheld on appeal.

On appeal, the Sixth Circuit rejected Terry's argument that his indictment should have been dismissed "because it failed to identify a crime" under *Skilling*. *Id.* The *Terry* court also rejected arguments that "the district court improperly instructed the jury on requirements for showing that Terry accepted a bribe" and "insufficient evidence showed that Terry accepted a bribe." *Id.* Similar to Defendant Stewart's arguments here, Terry's jury instruction and sufficiency of evidence challenges were premised on the definition of

4

bribery in the context of a campaign contribution to a public official. As the *Terry* court observed, "[t]he slate is not clean." *Id.* at 612. It then set out the guiding legal principles:

> . A public official can commit honest services fraud only by accepting a bribe or a kickback. *Skilling*, 130 S. Ct. at 2931.
>
> . A public official accepts a bribe when he "corruptly . . . receives . . . anything of value . . . in return for . . . being influenced in the performance of any official act." 18 U.S.C. § 201(b)(2); . . . .
>
> . One element of bribery is that the public official must agree that "his official conduct will be controlled by the terms of the promise or the undertaking." *McCormick [v. United States]*, 500 U.S. 257, 273 (1991); . . . .
>
> . This agreement must include a quid pro quo – the receipt of something of value "in exchange for an official act." *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999).
>
> . The agreement between the public official and the person offering the bribe need not spell out which payments control which particular official acts. Rather, "it is sufficient if the public official understood that he or she was expected to exercise some influence on the payor's behalf as opportunities arose." *United States v. Abbey*, 560 F.3d 513, 518 (6th Cir. 2009); . . . .

*Id.* (internal citations omitted).

The *Terry* court then acknowledged that the above principles "do not spell out what kinds of agreements – and what level of specificity – must exist between the person offering a bribe and the public official receiving it" and that there has been some debate in the federal Courts of Appeal about "how 'specific,' 'express' or 'explicit' a quid pro quo must be to violate the bribery, extortion and kickback laws." *Id.* at 612-13 (citing cases). That is the crux of Defendant Stewart's argument here – that Supreme Court and Sixth Circuit precedent requires that there be an "explicit" promise that a campaign contribution is being provided in return for the official to perform a "specific" act. (Def.'s Mot. at ii.)

The *Terry* court examined the Supreme Court's decisions in *Evans* and *McCormick*

5

and concluded that "these adjectives [specific, express, explicit] do not add a new element to the criminal statutes. . . ." *Id.* at 613. They merely observe that "the statutory requirement must be met – that the payments were made in connection with an agreement, which is to say 'in return for' official actions under it. So long as a public official agrees that payments will influence an official act, that suffices." *Id.* The Sixth Circuit clarified that "[w]hat is needed is an agreement, . . . which can be formal or informal, written or oral." *Id.* Moreover, because "most bribery agreements will be oral and informal, <u>the question is one of inferences</u> taken from what the participants say, mean and do, <u>all matters that juries are fully equipped to assess</u>." *Id.* (emphasis added).

Addressing the issue presented here, the *Terry* court emphasized, "[t]hat a bribe doubles as a campaign contribution does not by itself insulate it from scrutiny." *Id.*

> No doubt, a contribution is more likely to be a duty-free gift than a bribe because a contribution has a legitimate alternative explanation: The donor supports the candidate's election for all manner of possible reasons. But the prosecution may rebut that alternative explanation, and context may show that an otherwise legitimate contribution is a bribe. Take *Evans*. In that case, the Court permitted a jury to convict a state legislator who attempted to claim the payment he received was a campaign contribution. Take as well the Fifth Circuit's decision in *[United States v.] Whitfield, [590 F.3d 325, 353 (5th Cir. 2009]*. Two state judges argued that the loan guarantees they received were made in the context of their electoral campaigns and thus required special protection, but the court upheld a finding that the payments were bribes.

*Id.* at 613 (internal citations omitted). Campaign contributions are subject to scrutiny. And, "[i]f an official receives money 'through promises to improperly employ his public influence,' he has accepted a bribe." *Id.* (quoting *Abbey*, 560 F.3d at 519).

The *Terry* court explained that a quid pro quo agreement is the element that distinguishes an innocent campaign contribution from one that constitutes a bribe.

A donor who gives money in the hope of unspecified future assistance does not

>agree to exchange payments for actions. No bribe thus occurs if the elected official later does something that benefits the donor. On the other hand, if a donor . . . makes a contribution so that an elected official will do what [the donor] ask[s] him to do, and the official . . . accepts the payment with the same understanding, the donor and the official have formed a corrupt bargain. That agreement marks the difference between a run-of-the-mine contribution and a bribe.

*Id.* (internal quotes and citation omitted). It went on to reject the argument Defendant Stewart makes here – that "a payment becomes a bribe only if it is made in exchange for a *specific* official act or omission" – and reiterated that "[a]n agreement, once again, is the dividing line between permissible and impermissible payments." *Id.* at 614 (internal quotes and citation omitted).

The *Terry* court also rejected the argument that "campaign contributions must meet a higher standard to become a bribe because "the financing of political campaigns depends upon officials expecting some kind of benefit in return." *Id.* (internal quotes and citation omitted). The Sixth Circuit acknowledged that, while "not every contribution to an elected judge is a bribe" (citing *Buckley v. Valeo*, 424 U.S. 2, 21 (1976)), the holding in *McCormick* "does not give an elected judge the First Amendment right to sell a case so long as the buyer has not picked out *which* case at the time of sale." *Id.* Rather, as the trial court properly instructed the jury, "in order to find that Terry violated the honest services fraud statute, it needed to find a 'quid pro quo'; that is, Terry agreed to accept [a] thing of value in exchange for official action;" and "[a] 'thing of value' could include a campaign contribution so long as it was received in exchange for official acts." *Id.* (internal quotes and citations to trial transcript omitted).

Moreover, the *Terry* court concluded, the trial court properly instructed the jury that "Terry's intent to exchange official acts for contributions could be based on [Terry]'s words,

conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them." *Id.* (internal quotes and citations to trial transcript omitted). "Each payment did not need to be tied to a specific official act, so long as Terry understood that, whenever the opportunity presented itself, Terry would take specific official actions on the giver's behalf." *Id.* (internal quotation marks and citation to trial transcript omitted). The Sixth Circuit concluded that these jury instructions "matched the definition of bribery," and clarified that "[t]he jury needed to find that Terry agreed to accept things of value in exchange for official acts." *Id.* In summary, the *Terry* court observed that, while "[n]ot every campaign contribution . . . is a bribe in sheep's clothing," a jury (evaluating evidence presented at trial) "can reject legitimate explanations for a contribution and <u>infer</u> that it flowed from a bribery agreement." *Id.* at 615 (emphasis added). Stewart's motion inappropriately asks this Court, months before it goes to trial, to step into the shoes of the jury and make factual determinations and draw reasonable inferences from those facts and conclude whether the "things of value" that Dixon gave to Stewart, including campaign contributions (and the Florida trip discussed below), constituted a bribe.

Contrary to Defendant Stewart's arguments otherwise, the Indictment alleges the corrupt agreement that distinguishes Dixon's campaign contributions to Stewart from benign campaign contributions. Count 1 alleges that Stewart accepted "bribes and kickbacks in the form of cash, travel, meals, . . . and other things of value from persons who dealt with the Retirement Systems which acted on their proposals or requests," and Dixon "paid bribes and kickbacks" to Stewart "in order to secure monies from the Retirement Systems" for Dixon's companies, "Onyx Capital Advisers and PR Investment Group." (5th

Superseding Indictment, Count I, ¶¶ 4-5.) Count 1 also alleges that Defendant Stewart "and *Trustee B* collected over ten thousand dollars from investment sponsors and others, including ROY DIXON . . . , for their election 'campaign' for leadership of the Detroit Police Officers Association." (*Id.* at ¶ 38.)

Having satisfied Fed. R. Crim. P. 7(c)'s requirements for an Indictment, it remains the government's burden at trial to prove to a jury that this alleged corrupt agreement existed at the time Dixon made campaign contributions to Stewart. *See McCormick*, 500 U.S. at 270 (observing that "[i]t goes without saying that matters of intent are for the jury to consider); *see also Terry*, 707 F.3d at 613 (observing that because "most bribery agreements will be oral and informal, the question is one of inferences taken from what the participants say, mean and do, all matters that juries are fully equipped to assess."). Moreover, contrary to Defendant Stewart's arguments here, the *Terry* court clarified that, to constitute a bribe, a campaign contribution (like other things of value) "did not need to be tied to a specific official act, so long as [the defendant] understood that, 'whenever the opportunity present[ed] itself,' [the defendant] would take specific official actions on the giver's behalf." *Id.* at 614 (quoting trial transcript, jury instructions).

### C. The Florida Trip is Properly Alleged as Part of the Honest Services Fraud

Defendant Stewart also asks the Court to strike from Count 1 the allegations that Dixon bribed Stewart by providing him with a thing of value – free airfare and luxury hotel accommodations in Naples, Florida for Stewart and his mistress. In support, Stewart erroneously assumes that this Court will strike all allegations in the Indictment that Dixon's cash contributions to Stewart's campaign constitute a bribe. He then argues that, standing

9

alone, the Florida trip is "de minimus" and lacks a sufficient nexus to any of Stewart's official acts. (Def.'s Mot. at 7.) This argument is rejected. First, for all the reasons stated above, the allegations that the Florida Trip constitutes a bribe do not stand alone. Second, the Indictment also alleges that, during the course of the conspiracy, Dixon gave Stewart other bribes, including "cash and other things of value." (5th Superseding Indictment, Count 1, ¶¶ 4-5, 73.) Third, and more importantly, there is no legal support for Stewart's de minimus or lack-of-nexus arguments. To the contrary, the Sixth Circuit in *Terry* affirmed a similar honest services bribe charge based on a $500 campaign contribution and $700 worth of campaign-related supplies provided to a state court judge a full year before he took the official action that gave rise to his federal charges. As the *Terry* court observed, the defendant judge's corrupt agreement "came relatively cheap." *Terry*, 707 F.3d at 610.

### D. Stewart's Fifth Amendment Rights Were Not Violated

Finally, for all the reasons discussed above, this Court rejects Stewart's argument that the grand jury improperly considered allegations and evidence that Dixon's campaign contributions to him were bribes and thus violated his Fifth Amendment rights.

## II. Conclusion

Because Defendant Stewart has not persuaded the Court to strike the language he challenges from Count 1 of the Indictment, there is no basis to dismiss the charges against him that are alleged in that Count. For the above-stated reasons, Defendant Stewart's motion to strike and dismiss is therefore DENIED.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: May 8, 2014

## CERTIFICATION

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 8, 2014, by electronic and/or ordinary mail.

       s/Carol J. Bethel
       Case Manager