UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEFFREY BEASLEY, ET AL.,

    Defendants.
_____/

Case No. 12-20030

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT ZAJAC'S MOTION FOR A CHANGE OF VENUE [96]**

At a hearing held on April 29, 2014, this criminal matter came before the Court on Defendant Zajac's motion for a change of venue [96], joined by Defendants Stewart [175] and Beasley [195]. Defendant Zajac argues that venue should be changed because the extensive publicity surrounding the *Kilpatrick* investigation and trial has raised a presumption of inherent prejudice. Defendant Zajac does not argue that actual prejudice warrants a change of venue. Defendant's motion is DENIED as to his claim of presumed prejudice and DENIED AS PREMATURE as to any claim of actual prejudice.

The jury selection process, the trial, and the jury's deliberations in the *Kilpatrick* case, where the media and public attention was far greater, is evidence that the Court can likely seat a fair and impartial jury in this case. Because the Court's use of a juror questionnaire, individual voir dire, and a careful jury selection process will fully expose any prejudice from pretrial publicity, a change of venue is not warranted at this time.

**I.  Analysis**

Here, as in *Kilpatrick*, Defendant asks the Court to presume prejudice from pretrial publicity. *See United States v. Kilpatrick*, No. 10-20403, 2013 WL 4029084, at **6-9 (E.D. Mich. Aug. 8, 2013). A presumption of prejudice, however, "attends only the extreme case." *Skilling v. United States*, 561 U.S. 358, 130 S. Ct. 2896, 2915 (2010). And, "it is well-settled that pretrial publicity itself – even pervasive, adverse publicity – does not inevitably lead to an unfair trial." *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) (en banc) (internal quotation marks and citation omitted). A decision similar to that issued in *Kilpatrick* and in *United States v. Abdulmutallab*, No. 10-20005, 2011 WL 4343851 (E.D. Mich. Sept. 14, 2011), is warranted here.

The Sixth Amendment affords a criminal defendant the right to a trial by an impartial jury. Moreover, the United States Constitution establishes that trials are to be held in the district where the offense occurred. *See* U.S. Const., Art. III, § 2, cl. 3 ("The trial of all crimes . . . shall be held in the State where the said crimes shall have been committed"); U.S. Const., Amend. VI (observing that all criminal trials are to be conducted "by an impartial jury of the State and district wherein the crime shall have been committed."). These constitutional mandates yield only "if extraordinary local prejudice will prevent a fair trial." *Skilling*, 103 S. Ct. at 2913.

Fed. R. Crim. P. 21 governs venue transfers in federal court. Rule 21 instructs that:

> (a) For Prejudice. Upon the defendant's motion, the court must transfer the proceeding against that defendant to another court <u>if</u> the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

Fed. R. Crim. P. 21(a) (emphasis added).

The decision to grant a change of venue motion is committed to the trial court's discretion. *United States v. Chambers*, 944 F.2d 1253, 1262 (6th Cir. 1991) (superseded by statute on other grounds).

### A.  Prejudice Cannot Be Presumed

The Supreme Court has drawn a distinction between presumed and actual prejudice from pretrial publicity. *Murphy v. Florida*, 421 U.S. 794 (1975). "Presumptive prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007). "Where pretrial publicity cannot be presumed prejudicial, the trial court must then determine whether it rises to the level of actual prejudice. The primary tool for discerning actual prejudice is a searching voir dire of prospective jurors." *Id.* at 387 (internal citation omitted).

Here, Defendant asks the Court to presume prejudice from pretrial publicity. A presumption of prejudice, however, "attends only the extreme case." *Skilling*, 103 S. Ct. at 2915. Defendant bears an "extremely heavy" burden to show that pretrial publicity will deprive him of an impartial jury. *Coleman v. Kemp*, 778 F.2d 1487, 1537 (11th Cir. 1985). Reflecting the high bar Defendant must hurdle "[p]rejudice from pretrial publicity is rarely presumed." *Foley*, 488 F.3d at 387.

Defendant's "presumed prejudice" argument rests entirely on the raw number of news articles and television broadcasts that discuss Defendant's charges. This is insufficient. As the Supreme Court explained in *Skilling*:

> Prominence does not necessarily produce prejudice, and jury *impartiality*, we have reiterated does not require *ignorance*.

*Skilling*, 103 S.Ct. at 2914-15 (italics in original) (citing and quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("Jurors are not required to be 'totally ignorant of the facts and issues involved;' 'scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.'"); and *Reynolds v. United States*, 98 U.S. 145, 155-56 (1878) ("'[E]very case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who had not some impression or some opinion in respect to its merits.'")).

When considering whether to presume juror prejudice, courts look beyond the sheer amount of pretrial publicity. Rather, a number of factors are considered, including the following.

**1. Large Size and Diversity of Jury Pool**

First, courts have considered the "size and characteristics of the community in which the crime occurred." *Skilling*, 130 S. Ct. at 2915. In *Skilling*, a former Enron Chief Executive Officer was charged with offenses related to deceiving investors and others about Enron's performance before its collapse in bankruptcy. Skilling's trial took place in Houston, where Enron is based and where 4.5 million individuals eligible for jury duty resided. The *Skilling* Court concluded that "[g]iven this large, diverse pool of potential jurors, the suggestion that 12 impartial individuals could not be empaneled is hard to sustain." *Id.*

The same is true here. In the Metro Detroit area and the Southern Division of the Eastern District, there are over 4 million individuals available for jury service. As in *Skilling*, the defense contention that an impartial jury cannot be found from such a large pool is

untenable and is thus rejected. This factor weighs against finding a presumption of prejudice.

### 2. Content of Media Reports

Second, when determining whether prejudice should be presumed, the courts also consider whether news reports contained a "confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." *Skilling*, 130 S. Ct. at 2916. Consideration of this factor here also weighs against a change in venue.

Thus far, the publicity in this case has largely focused on the factual and procedural development of the case itself. As in *United States v. Johnson,* much of the publicity in this case has been "primarily descriptive of the indictment . . . and related proceedings." 584 F.2d 148, 154 (6th Cir. 1978). Such "fact-based" media coverage does not create a presumption of prejudice. *See United States v. Poulsen*, 655 F.3d 492, 507 (6th Cir. 2011). Rather, as the Sixth Circuit explained in *DeLisle v. Rivers*, "coverage that consists of straight news stories rather than invidious articles which would tend to arouse ill will and vindictiveness is not so troubling." 161 F.3d at 382 (internal quotation marks and citation omitted).

### 3. Time Lapse Between Precipitating Event and Trial

Third, in weighing whether to apply a presumption of prejudice, the courts also consider the time of the pretrial publicity and whether "trial swiftly followed a widely reported crime." *Skilling*, 103 S. Ct. at 2916. In *Skilling*, the Supreme Court observed that four years had elapsed between Enron's bankruptcy and Skilling's trial. Although there was news coverage throughout this period, "the decibel level of media attention diminished

somewhat in the years following Enron's collapse." *Id.* The same is true here. The scheduled October 7, 2014 trial will begin (1) almost six years after Kwame Kilpatrick resigned as Detroit's mayor and Co-Defendant Jeffrey Beasley resigned as treasurer; (2) over five years after the end of the alleged conspiracy; (3) about nineteen months after all four Defendants were named in the Fifth Superseding Indictment; and (4) about nineteen months after the completion of the *Kilpatrick* trial. Thus, this factor also weighs against a change in venue.

### 4. Impact on Community

Defendant makes only unsupported claims about the impact of this case on the community in urging the Court to presume prejudice. For instance, Defendant contends that because "this community from 2005 to the present has been significantly exposed to eight years of media publicity portraying rampant corruption and bribery in the Kilpatrick administration, its residents will perceive themselves as victims of corruption and bribery and will unfairly perceive Defendants as guilty merely by association with the Kilpatrick administration. (Def.'s Mot. at 3.) In *Skilling*, the defendant's victims were numerous and the community impact of his crimes widespread. *Skilling*, 103 S. Ct. at 2917. Nonetheless, the Supreme Court found that the jury questionnaire and follow-up voir dire were "well-suited" to identifying jurors' connections to Enron. The same measures are being employed here to identify juror prejudices or biases.

Consideration of the above factors convinces the Court that juror prejudice cannot be presumed. Similar venue transfer requests have been denied in other cases involving substantial pretrial publicity and community impact, e.g., *Kilpatrick* and *Abdulmutallab*. The circumstances present here are markedly different than those in which the Supreme Court

has presumed prejudice from pretrial publicity. *See Skilling*, 103 U.S. at 2913-1915 (distinguishing *Rideau; Estes v. Texas*, 381 U.S. 532 (1965); and *Sheppard v. Maxwell*, 384 U.S. 333 (1966)).

### B. Actual Prejudice - Defendant's Motion is Premature

The Court must also consider whether pretrial publicity rises to the level of actual prejudice. *Foley*, 488 F.3d at 387. Voir dire is the primary vehicle for ascertaining actual prejudice. *Id.* As the Sixth Circuit observed in *Johnson*,

> The merit of a change of venue motion is most likely to be revealed at voir dire of the potential jurors. Through proper questioning the court can determine the extent of the veniremen's exposure to the publicity and the effect it has had upon them. Exposure to publicity alone does not presumptively deprive the defendant of his right to fair and impartial jurors. Rather, the test is whether any potential juror who has been exposed to publicity can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

584 F.2d at 154 (internal quotation marks and citations omitted).

Here, the Court has fashioned an extensive written questionnaire that will probe each prospective juror's exposure to any pretrial publicity. In addition, each juror will be subject to individual voir dire during which follow-up questions relating to pretrial publicity can be further probed. Through these measures, the Court can determine whether jurors have seen or heard anything about this case, whether they have been affected by it, and whether they can lay aside any preconceived impressions or opinions that they may have formulated. Because the jury questionnaire and voir dire will fully expose any prejudice from pretrial publicity, a change of venue is not warranted at this time.

### II. Conclusion

For the above-stated reasons, Defendant Zajac's motion is DENIED as to his claim

of presumed prejudice, and DENIED AS PREMATURE as to his claim of actual prejudice.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: May 8, 2014

## CERTIFICATION

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 8, 2014, by electronic and/or ordinary mail.

        s/Carol J. Bethel
        Case Manager